**Terry COLLINS, Plaintiff,**

v.

**PROMARK PRODUCTS, INC., Defendant and Third-Party Plaintiff,**

v.

**UNITED STATES of America, Third-Party Defendant.**

**No. 87 Civ. 2411 (WK).**

United States District Court, S.D. New York.

April 12, 1991.

Sarah Thomas, Asst. U.S. Atty., U.S. Attorney's Office for S.D.N.Y., for third-party defendant.

Richard A. Tanner, Cedar Grove, N.J., for defendant/third-party plaintiff.

Kenneth Dalton, Sutera Siracuse & Sutera, New York City, for plaintiff.

OPINION AND ORDER

WHITMAN KNAPP, Senior District Judge.

On April 8, we filed an opinion denying the government's motion seeking dismissal of the third-party complaint against it. Thereafter we received a letter from the government in further support of such motion. Construing that letter as a motion for reargument, we grant it.

The letter includes citations to several cases which the government accurately asserts contain language having a bearing on the result at which we arrived: *Central R.R. Co. of N.J. v. Jersey City* (1908), 209 U.S. 473, 28 S.Ct. 592, 52 L.Ed. 896 (Holmes, J.); *People v. Central R.R. Co. of N.J.* (1870), 42 N.Y. 283; *Tennant v. State Bd. of Taxes and Assessments* (1921), 95 N.J.L. 465, 113 A. 254; *Ross v. Mayor and Council of Borough of Edgewater* (Sup.Ct. 1935), 115 N.J.L. 477, 180 A. 866, *aff'd*, 116 N.J.L. 447, 184 A. 810, *cert. denied*, (1936),

299 U.S. 543, 57 S.Ct. 37, 81 L.Ed. 400; *New York Cent. R.R. Co. v. State Dep't of Taxation and Fin.* (1948), 137 N.J.L. 288, 59 A.2d 859, *aff'd* (1949), 1 N.J. 298, 63 A.2d 268; *Clarke v. Ackerman* (1st Dep't 1935) 243 A.D. 446, 278 N.Y.S. 75; *Kowalskie v. Merchants & Miners Transp. Co.* (Sup.Ct.1947), 76 N.Y.S.2d 699. Had we been favored with these citations before the case was argued, our opinion would undoubtedly have been differently phrased. However, for reasons that follow, we adhere to our stated conclusion.

The government's principal reliance, quite appropriately, is on Justice Holmes's opinion in *Central R.R. Co. of N.J. v. Jersey City*, which concededly contains language supporting the government's position. However, the *decision* was an extremely narrow one. As stated at the conclusion of the Justice's opinion: "We are of the opinion that the land in question [*i.e.* certain land lying between the middle of New York bay and its low-water line on the New Jersey shore] is subject to the sovereignty of the state of New Jersey, and that the exclusive jurisdiction given to the state of New York *does not exclude the right of the sovereign power to tax.*" 209 U.S. at 480, 28 S.Ct. at 594 (emphasis added). It is, of course, axiomatic that the right to tax is the very last thing it will be assumed that a sovereign intended to relinquish. *See Hoge v. Railroad Co.* (1878), 99 U.S. 348, 355, 25 L.Ed. 303 ("The power of taxation is an attribute of sovereignty, and is essential to every independent government. Stripped of this power, it must perish."); *see also Seton Hall College v. Village of South Orange* (1916), 242 U.S. 100, 106, 37 S.Ct. 54, 56, 61 L.Ed. 170; *Wilmington & Weldon R.R. v. Alsbrook* (1892), 146 U.S. 279, 294, 13 S.Ct. 72, 75, 36 L.Ed. 972.

Justice Holmes relied in part on *Ferguson v. Ross* (1891), 126 N.Y. 459, 27 N.E. 954, which also contains language favorable to the government's present position. However, the *decision* seems supportive of our original conclusion. The court, construing the 1833 compact, upheld a penalty imposed upon defendants who, in violation of a New York state statute, had dumped

dredged materials into the New Jersey side of the Hudson river. It would appear to us that a state's power to impose criminal penalties on an individual would include the less intrusive power to have that individual's tortious conduct governed by the same state's law. Indeed, Justice Holmes clearly recognized that the *Ferguson* decision was inapplicable to the matter before him, observing: "Whether, in the case at bar, some power of police regulation also was conferred upon New York ... need not be decided now." 209 U.S. at 479, 28 S.Ct. at 593.

In connection with our reading of Justice Holmes's opinion, we must observe that the Justice, being a renowned apostle of the law at its most practical, would hardly have been likely to have knowingly rendered a decision making it necessary for every person injured on Ellis Island to engage in litigation to establish the exact spot on the island where the injury was sustained.

As to the other cases cited by the government, we simply note that, although they contain language favorable to its position, none of them (except the Special Term decision in *Kowalskie v. Merchants & Miners Transp. Co.*) dealt with a situation remotely comparable to the one at bar. Perhaps special note should be taken of Justice Townley's opinion in *Clarke v. Ackerman* (1st Dep't 1935), 243 A.D. 446, 278 N.Y.S. 75. That case involved an attempt by a plaintiff to obtain long-arm jurisdiction over a defendant who had caused an accident on the New Jersey side of the George Washington Bridge. Although Justice Townley, in analyzing the compact, did use language favorable to the government here, he observed that at the time the compact was created "neither tunnels nor bridges were in [the] minds" of the commissioners who entered into it; and that "[i]t is possible to consider this bridge as an 'improvement' made to or on the shore of New Jersey under article third, subdivision 2, of the treaty." We suggest that if the framers had considered the possibility of similar "improvements" made to or on the shore of Ellis Island, they would have made similar provision for the extension of New York's "present jurisdiction" over such improvements.

For the reasons stated, we adhere to our decision as filed. However, it cannot be gainsaid that reasonable minds might differ as to the weight that should be given to the various dicta the government has cited. We therefore certify the question to the Court of Appeals pursuant to 28 U.S.C. § 1292(b). In this connection, we observe that this is the type of litigation which usually settles as soon as the parameters of legal liability are established. Accordingly, we can say with some confidence that an immediate appeal would in all probability materially advance the ultimate termination of the action. Moreover, it seems to us of considerable importance that the question the government raises have a definitive answer.

CONCLUSION

The government's motion for reargument is granted. We adhere to our decision, and, pursuant to 28 U.S.C. § 1292(b), certify it to the Court of Appeals.

SO ORDERED.