A. Franklin Mahoney, J.
Petitioner (Mayor of the City of Albany and a resident taxpayer) seeks an order of prohibition pursuant to article 78 of the CPLB. prohibiting the Board of Elections of the County of Albany from accepting, filing and placing on the ballot at the November, 1971 general election names of candidates for the Board of Education of the City of Albany pursuant to article 52 of the Education Law, as amended by chapter 462 of the Laws of 1970. In this connection it should be noted that chapter 462 of the Laws of 1970 added subdivision 9 to section 2553 of the Education Law. This subdivision has application solely to the City of Albany and (a) mandates that members of the Board of Education of the city school district be elected (rather than appointed) and (b) that the members of the board shall be elected at large throughout the city by the qualified voters at the general election. Subdivision 10 of section 2553 of the Education Law made the provisions of subdivision 9 operative only after voter approval by referendum at the general election of 1970. The qualified voters of Albany approved the propounded question and subdivision 9 of section 2553 became law, effective May 5,1971.
The petitioner contends that chapter 462 of the Laws of 1970 becomes inoperative after July 1, 1971 and, as a result, the amendment to section 2553 of the Education Law, which added subdivision 9 thereto, falls with its parent section and will have *278 no application to the school affairs of the City of Albany after July 1 of this year. In support of this position the Mayor cites sections 2501 and 2502 of article 51 and section 2602 of article 53 of the same law. Further, Mayor Corning insists that the so-called “big six ” section of the Education Law (§ 2550) is wholly consistent with the legislative intention of distinguishing between cities of 125,000 population or less in the manner in which the school affairs of such cities should be conducted.
Section 2501 makes article 51 of the Education Law applicable to “ each school district which now is, or hereafter becomes, a city school district of a city with less than one hundred twenty-five thousand inhabitants according to the latest federal census ”. (Italics supplied.) Subdivision 2 of section 2502 of the same article provides that “ Members of such board shall be elected by the qualified voters at large of the school district at annual school elections, under the provisions of article fifty-three of this chapter ”. Section 2602 of article 53 states, “ An annual school election shall be held on the first Tuesday of May in each city school district.” All parties to this proceeding admit that the official 1970 census figures for the City of Albany fix its population at 114,873. Next, the petitioner points to section 1 of chapter 492 of the Laws of 1970, effective May 8, 1970 as the expression of the legislative intention that the “big six” section (§ 2550) of the Education Law was not to operate to prevent the City of Albany from being governed by the provisions of article 51 if its population fell below 125,000 in the 1970 census. Section 1 of chapter 492 of the Laws of 1970 provided: “ Notwithstanding any contrary provision of the education law, or of any general, special or local law, a city school district of a city which had one hundred twenty-five thousand inhabitants or more according to the federal census of the year nineteen hundred sixty, and which has less than one hundred twenty-five thousand inhabitants according to the federal census of the year nineteen hundred seventy, shall continue to be subject to and governed by all of the provisions of article fifty-two of the education law and all other provisions of any general, special or local law relating to city school districts of cities of one hundred twenty-five thousand inhabitants or more until July first, nineteen hundred seventy-one.” (Italics supplied.)
The language of section 1 of chapter 492 of the Laws of 1970 is clear, precise and unambiguous. It unmistakenly declares the legislative intention that any city, including one of the ‘ ‘ big six ’ ’, that fell below 125,000 in population, as determined by the 1970 Federal census, would be governed by article 51 of the Education Law after July 1, 1971. • /
*279 The respondents’ argument that the legislative use of population figures is merely 11 words of convenience ” and was not intended to be a determining factor in deciding which article governed a particular city school district is unpersuasive when juxtaposed to the actual language of sections 2501 and 2550 and particularly, section 1 of chapter 492 of the Laws of 1970. While I concede an apparent legislative inconsistency in adopting chapter 462 of the Laws of 1970, which provided for an elected school board for the City of Albany if approved by referendum, and then enacting chapter 492 of the Laws of 1970, effective only three days after chapter 462, that directed the application of article 51 to any city which fell below 125,000 in population in the 1970 census, I cannot accept the conclusion of respondents that this constituted an implied repeal of chapter 462 and is, therefore, illogical and not expressive of the legislative intention. To accept such an arugment is to conclude that the Legislature knew in advance that the 1970 census would show that Albany had fallen below 125,000 in population. While such a suggestion that the members of the Legislature were and are omniscient is delightful in connotation, it must be put aside for the more pragmatic view that they, like all of us, are without such infinite awareness or knowledge. Further, it cannot be said that chapter 492 repealed chapter 462 by implication. Chapter 492 amended the effect of chapter 462 (providing for the elective school board in Albany) because a fact, wholly within the knowledge of the Legislature and provided for in chapter 492, occurred. The population of Albany fell below 125,000 inhabitants in the 1970 census. If that fact did not happen the two chapters would be consistent and reconcilable (McMaster v. Gould, 240 N. Y. 379; County of Saratoga v. Saratoga Harness Racing Assn., 4 N Y 2d 622). The two chapters passed by the 1970 Legislature may not be construed as inconsistent, for they may fairly be read otherwise. Chapter 462 provided for an elected Board of Education. Chapter 492 directed that any city that fell below 125,000 people in the 1970 census would be governed by article 51 of the Education Law. The Legislature did not say “ except Albany” and the court cannot add that language to chapter 492. Neither can the court say that chapter 462 shall apply to the City of Albany regardless of the provisions of chapter 492 and regardless of the findings of the 1970 census. If an injustice results, the court is without power to correct it. The language expressive of the legislative intent is clear and precise and must be followed by the court. Chapter 462 of the Laws of 1970 becomes inapplicable to the City of Albany on July 1,1971.
*280 While the conclusion reached above makes unnecessary a review of the constitutionality of subdivision 9 of section 2553 of the Education Law, a judicial look is, nevertheless, in order.
Section 17 of article III of the New York State Constitution states, “ The legislature shall not pass a private or local bill in any of the following cases: * * * The opening and conducting of elections or designating places of voting.” Subdivision 9 of section 2553 relates to the City of Albany only and makes provision for (1) the nomination of candidates, (2) the number of signatures required, (3) the prohibition of participation by political parties, (4) the time for filing petitions, (5) the qualifications of candidates, (6) the type of petition, (7) the form of the petition, (8) the printing of the ballots, (9) the arrangement of the names of candidates on the voting machine, (10) the mandate that only voting machines be used, (11) the conduct of the election, (12) the canvassing of the election. A determination of whether such particularized requirements for the conduct of a school board election in a single city is constitutionally defective because of its private or local characteristics requires a brief discussion of Albany’s classification under the terms of the Education Law. On July 1, 1951 the, City of ■ Albany, together with the Cities of New York, Buffalo, Rochester, Syracuse and Yonkers, was classified for educational purposes and article 52 of the Education Law was made applicable solely to these six communities (Education Law, § 2550). Because of this act the specified cities became known as the ‘1 big six ”. This classification was based on population and it was a legitimate exercise of the legislative function to so arrange these cities. The courts have long recognized that classification may be reasonable which separates New York City, with its population of 6,000,000 from all other cities of the State, or which places Erie County, containing the City of Buffalo, or Monroe County, containing the City of Rochester, or, as in this case, places the six largest cities in the State in separate classes based on population (Stapleton v. Pinckney, 293 N. Y. 330). Conditions due to difference in population reasonably require differentiation in applicable law. However, once the Legislature has created a class, that class must be dealt with generally. In Matter of Church (92 N. Y. 1, 4-5) the Court of Appeals said “ A law relating to particular persons or things as a class was said to be general; while one relating to particular persons or things of a .class was deemed loeal and private ”. In Matter of Henneberger (155 N. Y. 420) the Court of Appeals analyzed cases (citing Ferguson v. Ross, 126 N. Y. 459 and Matter of Church, 92 N. Y. 1, supra) where the court had been called upon to dis *281 tinguish between a ‘ ‘ general ’’ora11 local ’ ’ law in light of the constitutional prohibition against the latter type statute. It was the court’s conclusion (p. 430) that “ an act embracing all things of a certain class is general and not a local act ’ ’, but it refused to apply the rule to a case where attempted 1 ‘ classification ” is based on conditions “which cannot be recognized as common to a class ’ ’ and have no reasonable relation to the subject. In other words, the courts will condemn as constitutionally impermissible the formulation of a law which purports on its face to have general application to a class but which in effect singles out a member of a class for separate, distinct and individual treatment. Under the terms of the law that respondents seek to sustain, all ‘ ‘ big six ’ ’ cities are governed by article 52 of the Education Law as “ a class ”. Yet, subdivision 9 of section 2553 imposes on the City of Albany multiple requirements for the conduct of its school board election and is silent as to the manner in which the other members of the same class are to conduct their school affairs.
Legislation based on classification must have a reasonable genesis. It cannot be created to meet local conditions, be they political or otherwise. The specifications of subdivision 9 of section 2553 of the Education Law are particularized to offset what its authors believe are real or imagined political advantages of one of the major parties. As such it is offensive to the letter of section 17 of article III of the State Constitution and should be held to be constitutionally defective. A law cannot tangentially refer to a class and be upheld if the provisions of the law single out a member of that class for separate treatment for reasons that have nothing to do with the purpose of the classification. Section 2550 lumped the “big six” cities together because of the population factor. Subdivision 9 of section 2553 which itemizes how Albany is to conduct its school board elections has nothing to do with population. In my view, subdivision 9 of section 2553 of the Education Law is “ local ” in nature and contravenes the State Constitution (Farrington v. Pinckney, 1 N Y 2d 74).
The application for a writ of prohibition pursuant to article 78 of the CPLR is granted.