In the Matter of ERASTUS CORNING, 2ND, Respondent, *v.* THOMAS F. DONOHUE et al., Constituting the Board of Elections of Albany County, Appellants, and LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, et al., Intervenors-Appellants.

Third Department, July 15, 1971.

214

*John J. Clyne, County Attorney,* for appellants.

*Louis J. Lefkowitz, Attorney-General (Ruth Kessler Toch, Jean M. Coon* and *William J. Kogan* of counsel), intervenor-appellant.

*Arthur J. Harvey* (*Beatrice F. Dunn* of counsel), for League of Women Voters and others, intervenors-appellants.

*Lawrence F. Klepper* for Catherine Boddie and others, intervenors-appellants.

*Harvey M. Lifset* for respondent.

*Per Curiam.* This is an appeal from a judgment of the Supreme Court at Special Term, entered June 18, 1971 in Albany County, which (1) held chapter 462 of the Laws of 1970 inapplicable to the City of Albany after July 1, 1971; (2) declared subdivision 9 of section 2553 of the Education Law, as added by such chapter, unconstitutional; and (3) enjoined the Albany County Board of Elections from accepting for filing petitions nominating candidates for the Board of Education, and prohibited said Board of Elections from placing the names of such candidates upon the ballot for the general election of 1971.

Article 52 of the Education Law applies to the city school districts of New York, Buffalo, Rochester, Syracuse, Yonkers and Albany. Article 51 of such law applies to city school districts of cities with less than 125,000 inhabitants. By chapter 462 of the Laws of 1970, the Albany Board of Education was made elective, subject to a permissive referendum which was to be approved or rejected by the people of Albany at the general election in 1970. A referendum was held and the people of Albany approved the elective board. Chapter 462 also establishes that the first election of the members of the Albany Board of Education to be held thereunder shall take place at the November, 1971 general election.

Chapter 492 of the Laws of 1970, which became effective three days after chapter 462, provides that in the case of a city which had a population of over 125,000 by the 1960 census and has a population of less than 125,000 as a result of the 1970 census, the school district therein should be governed by the provisions of article 52 of the Education Law until July 1, 1971. The message of necessity on which this bill was passed stated that the City of Albany school district would continue to be subject to the provisions of article 52 regardless of the population figure resulting from the 1970 census.

Petitioner, Mayor of the City of Albany, brings this article 78 proceeding as a taxpayer and resident on behalf of himself and others similarly situated seeking an order of prohibition restraining the Albany County Board of Elections from placing the names of candidates for the Board of Education on the ballot at the 1971 general election. It is alleged by petitioner, and admitted by the Attorney-General, that Albany's population as a

result of the 1970 Federal census is 114,873. Petitioner contends, therefore, that article 51 governs the city school district in such city. Petitioner also attacks subdivision 9 of section 2553 (enacted by L. 1970, ch. 462), as unconstitutional on the grounds that it violates section 17 of article III of the State Constitution and equal protection of the laws in accordance with the Federal and State Constitutions.

Special Term held that although chapters 462 and 492 passed at the 1970 session of the Legislature were not inconsistent, since Albany fell below 125,000, it must be governed by article 51 after July 1, 1971. It also held that subdivision 9 of section 2553 of the Education Law is unconstitutional on the ground that it contravenes section 17 of article III of the New York State Constitution.

We will discuss the issues in the order they are mentioned.

Article 52 specifically enumerates and limits its application to six cities only, including Albany. We are of the opinion that a decrease in population to under 125,000 did not *ipso facto* remove Albany from the regulating scope of article 52. Implementing legislation will be required to accomplish this result. The Legislature has repeatedly expressed its intent that Albany should be governed by article 52. An amendment to article 51 in 1951 provided that it was not intended that article 51 change any provisions of article 52 relating to the six cities, including Albany. As to the enactments by the 1970 Legislature it again has expressed a clear intent to continue Albany within the purview of article 52. Chapter 462 became a part of article 52 and set up a detailed procedure for the election of the members of the Board of Education for the City of Albany. Chapter 492, with its accompanying message of necessity, further demonstrates that Albany is to continue to be governed by article 52. It is incredible that the Legislature would enact chapter 462, provide for a referendum at the 1970 general election and set the first election of Albany's Board of Education for the 1971 general election, only to enact chapter 492 which by its language would seem to prevent the procedure set forth in 462 from ever being utilized. In any event, chapter 492 provides merely that the law shall terminate as of July 1, 1971. It does not provide that henceforth article 51 shall apply to the City of Albany. Consequently, it is our conclusion that the City of Albany continues to be governed by article 52 and not by article 51.

In considering the constitutionality of a statute we start with the presumption that it is constitutional and that every intendment is in favor of its validity. (*Farrington* v. *Pinckney*, 1 N Y

2d 74.) Petitioner, therefore, in the instant case, has the burden of rebutting this presumption as it relates to the statute in question.

In arriving at its decision Special Term relied on *Stapleton* v. *Pinckney* (293 N. Y. 330). This we believe was error. *Stapleton* dealt with the method of selecting jurors and prescribed a system which singled out the County of Albany for special treatment. This violated that portion of section 17 of article III which provides "the legislature shall not pass a private or local bill in any of the following cases: * * * Selecting, drawing, summoning or empaneling grand or petit jurors." In the present case we are confronted with an entirely different problem. Here we are dealing with education, and section 1 of article XI of the Constitution provides as follows: "The legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated." It has been repeatedly held that education is a matter of State interest, and not local. (See *Matter of Divisich* v. *Marshall*, 281 N. Y. 170, 173; *People ex rel. Elkind* v. *Rosenblum*, 184 Misc. 916, affd. 269 App. Div. 859, affd. 295 N. Y. 929; *Lanza* v. *Wagner*, 11 N Y 2d 317, 326.) Consequently, the Legislature had the authority to provide a system of education for the City of Albany. The issue before us, therefore, narrows to whether the means adopted by the Legislature contravenes section 17 of article III by providing that the members of the Board of Education be selected at a general election by the voters of Albany.

Section 17 of article III prohibits the adoption by the Legislature of a private or local bill relating to the "opening and conducting of elections or designating places of voting". Special Term concluded that the statute in question conflicts with section 17 of article III on the ground that the statute is local in nature since it is directed solely at Albany and none of the other five cities enumerated therein are affected. We conclude otherwise. While education is a State function, localities throughout the State have different problems and needs. To effectually administer the educational system of the State the Legislature must have some latitude in dealing with local conditions. (See *Lanza* v. *Wagner*, 11 N Y 2d 317, *supra; Matter of Ahern* v. *Elder*, 195 N. Y. 493, 500.) There is reasonable basis for the establishment by the Legislature of both elected and appointed boards of education in different areas of the State. (*Cohen* v. *State of New York*, 52 Misc 2d 324, 327–328.) It is significant that the voters of the City of Albany have already determined by referendum that this is the procedure they desire for the selection of their Board

of Education. We must assume that the Legislature was cognizant of any local conditions. We conclude that the present statute is general in nature and properly legislates the conditions in Albany, furthering the over-all State purpose of education.

We find no merit in the other issue raised by petitioner. Having candidates for the same office or group of offices running on a nonpartisan basis is not discriminatory.

The judgment should be reversed, on the law and the facts, and the petition dismissed.

HERLIHY, P. J., REYNOLDS, GREENBLOTT, SWEENEY and SIMONS, JJ., concur.

Judgment reversed, on the law and the facts, and petition dismissed, without costs.